IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANKARA S.,[1]

      Plaintiff,

v.                                                                     No. 2:25-cv-00031-JHR

FRANK BISIGNANO
*Commissioner of the Social Security Administration*,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO
REVERSE AND REQUEST FOR IMMEDIATE BENEFITS [DOC. 10]</u>

THIS MATTER comes before the Court on Plaintiff's Brief in Support of Request for Review of Social Security Decision Under 42 U.S.C. § 405(g) [Doc. 10] ("motion to reverse"). The Commissioner filed a response [Doc. 19] and Plaintiff replied [Doc. 20]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry H. Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. The Court, having reviewed the briefing, the administrative record [Doc. 8] ("AR"), and applicable law, GRANTS Plaintiff's motion to reverse and remands for an award of immediate benefits.

## I.      PROCEDURAL BACKGROUND

Plaintiff first applied for disability on December 19, 2008, which the Administration denied initially and upon reconsideration in 2009. (AR 463). Plaintiff did not appeal these denials. (AR 463). Plaintiff filed a concurrent application for disability insurance benefits ("DIB") on May 13, 2013, alleging disability since June 1, 1992. (AR 170–71). The Administration denied the claim for disability initially and again on reconsideration. (AR 110, 125). Plaintiff requested a hearing

---

[1] Plaintiff's last name is abbreviated in the interest of privacy.

1

before an administrative law judge ("ALJ"), who found Plaintiff not disabled pursuant to the Social Security Act on July 28, 2016. (AR 614). After the Administration's Appeals Council denied Plaintiff's request for review, Plaintiff filed a petition in this Court challenging the decision on August 9, 2017. (AR 627).

On November 20, 2018, the Court reversed the ALJ's decision and remanded for further consideration. (AR 630). The Court found that the ALJ did not base his assessment of the opinions of Plaintiff's treating physician Roset Samuel, consultative examiner Dr. Roger Felix, and other examiners on substantial evidence. (AR 631–637). On January 14, 2020, a new ALJ found Plaintiff not disabled. (AR 670). Plaintiff appealed again to the Appeals Council, who reversed and remanded for further consideration. (677). Among the reasons for reversal, the Council noted the ALJ had failed to explain its rejection of medical expert Dr. Peter Schosheim's opinion that Plaintiff could not stand and/or walk more than four hours in an eight-hour workday. (AR 679).

On remand, a third hearing was held before ALJ Michelle Lindsay on February 3, 2023. (AR 462). On April 7, 2023, the ALJ issued her decision finding Plaintiff not disabled. (AR 486). Plaintiff appealed to the Appeals Council, who declined jurisdiction. (AR 442). Plaintiff filed his petition challenging the decision on January 10, 2025. [Doc. 1].

## II.      STANDARD OF REVIEW

When a party appeals an adverse disability decision, the court must affirm if the ALJ applied correct legal standards and supported her factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Judicial review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards under

appropriate circumstances can warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors do not warrant reversal if the ALJ's findings are sufficiently thorough and supported to render the error harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the whole record to determine if the ALJ met the standard, including any evidence that may undercut or detract from his findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence [nor] substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The reviewing court must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or her decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.    THE COMMISSIONER'S FINAL DECISION

A claimant who seeks disability benefits under the Social Security Act must demonstrate that he cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments

3

significantly limiting her ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a listed disabling impairment; (4) whether the claimant's residual functional capacity ("RFC") would preclude his ability to perform his past relevant work, and finally; (5) whether the claimant's age, education, experience, and residual functional capacity would enable him to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if his medical impairments are per se disabling or otherwise prevent him from performing his past work and any other viable work options. *See* 20 C.F.R. § 404.1505(a).

## A.      Steps One, Two, and Three.

At step one, the ALJ found the relevant period for consideration to be November 19, 2009, through December 31, 2023, the date Plaintiff last meet the insured status requirements of the Social Security Act. (AR 465). The ALJ began with November 2009, as opposed to Plaintiff's claimed onset date, due to the denial of Plaintiff's first concurrent application. (AR 463). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since November 19, 2009. (AR 465). At step two, the ALJ found Plaintiff suffered from the following severe impairments: osteoarthritis of the right hip, degenerative joint disease of the knees, left hip, shoulders, and neck, and facet arthritis of the cervical spine. (AR 467). The ALJ noted that Plaintiff's records showed issues with rheumatoid arthritis and fibromyalgia but found they lacked sufficient objective medical evidence to support finding they were medically determinable impairments. (AR 467–68).

At step three, the ALJ found Plaintiff's impairments did not meet nor medically equal the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 468). Testifying expert Dr. Eric Schmitter opined that Plaintiff satisfied the criteria for Listing 1.18,

"abnormality of a major joint(s) in any extremity." (AR 468); 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.18. However, the ALJ concluded there was insufficient evidence that Plaintiff continuously needed an assistive device that required two hands such as canes, a walker, or bilateral crutches, *see* § 1.18(D)(1), to support Schmitter's opinion. (AR 468–69). The ALJ specifically cited two treatment notes in which the examiner found Plaintiff had normal gait and made "no mention of any assistive device." (AR 469).

**B.    The ALJ's RFC Analysis.**

The physical exertion requirements for types of work are categorized as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Plaintiff could perform light work pursuant to 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can never climb ladders[,] ropes[,] or scaffolds. He can occasionally climb stairs and ramps, and can occasionally stoop, crouch, kneel, and crawl. He can occasionally reach overhead with the upper extremities, but forward and lateral reaching is not limited. He must avoid more than occasional exposure to extreme cold and to vibration. He must avoid more than occasional exposure to unprotected heights and hazardous moving machinery.

(AR 469).

The ALJ began by discussing Plaintiff's reports on daily living activities and symptoms. Relevant here, the ALJ noted Plaintiff stated he suffers from severe pain and difficulty standing and walking for very long and hasn't managed a "conventional job" since age twenty-two. (AR 469–71). In addition, he testified to using a cane frequently between 2009 to 2017 but "does not need it as much now." (AR 471). The ALJ also referred to a function report filled out by Plaintiff on June 12, 2013, in which he listed his daily activities include working on the computer, making breakfast, tutoring his children, light cleaning, paying bills, making phone calls, taking the children out to play, handling his own hygiene, doing household chores like sweeping, laundry, feeding chickens, or "straightening up around the house," and spending time with family, friends, or

5

hobbies. (AR 470–71). The ALJ found Plaintiff's impairments could cause his reported symptoms, but the degree of severity to which he testified was not credible. (AR 471). As support, the ALJ cited x-ray imaging, Plaintiff's presentation to treatment providers and consultative examiners, improvement of his symptoms with medication, and his daily activities. (AR 472–84).

The ALJ also discussed medical expert opinions. Relevant here, the ALJ again rejected Samuel's opinions despite her role as a treating physician. The ALJ also found unpersuasive opinions from treating physician Dr. Arthur Snyder, consultative examiner Dr. Roger Felix, and testifying expert Dr. Peter Schosheim. (AR 472–84). Samuel opined that Plaintiff suffered from, among other things, an inability to perform a seated job for more than one hour and an inability to stand and/or walk for more than one hour in an eight-hour workday. (AR 472, 475). The ALJ concluded these opinions were "extreme" in light of x-rays that did not show degenerative issues in the spine until 2013, Samuel's unsupported speculation about the onset date of Plaintiff's impairments, Samuel's inconsistencies with other opinions, changes in her opinions over time, and Plaintiff's daily activities from 2013. (AR 479–81). In addition, the ALJ noted Plaintiff's inquiries about obtaining disability benefits with Samuel and his wife and mother's paying into the Social Security system to ensure better insurance coverage for Plaintiff. (AR 472–73).

Snyder opined in 2019, after obtaining pelvic and bilateral leg x-rays of Plaintiff, that Plaintiff likely could not stand for more than an hour at time, and certainly could not stand for two to six hours due to arthritis in his hips. (AR 480). The ALJ found that while Snyder was a treating physician commenting on his area of expertise, the opinion was not consistent or supported by the "evidence as a whole," specifying that "[Plaintiff] engages in a wide range of activities consistent with light work, as set out in the RFC." (AR 480). Felix performed a consultative examination on August 10, 2013, and concluded Plaintiff would struggle with standing, walking, squatting,

6

stooping, bending, and climbing. (AR 483). The ALJ gave this opinion "light weight" due to its inconsistency with two other consultative examiners' opinions, reliance on Plaintiff's allegations of pain, and disuse of "specific, functional terms." (AR 483). Finally, the ALJ rejected Schosheim's testimony that Plaintiff could not stand or walk for a combined four hours in a work day based on two treatment notes from 2022. (AR 484). The ALJ otherwise gave Schosheim's opinions "significant weight." (AR 484).

The ALJ adopted the opinions of the two other consultative examiners, Drs. Kenneth Yaw and Steven Gross. Among other findings from an examination on May 23, 2009, Yaw observed Plaintiff walk with "slight discomfort," display an "unsteady" gait, and "get on and off the examination table, and in and out of his chair with slight difficulty." (AR 280). Yaw concluded that "allowing for the limitations that the patient attributes to his pain, [Plaintiff] is able to sit, stand, walk and lift." (AR 281). The ALJ found that despite the lack of "specific maximum amounts of sitting, standing, walking, and lifting," Yaw's opinion provided no basis to limit Plaintiff's standing and walking other than his "deconditioning." (AR 481). Gross examined Plaintiff on October 24, 2009. (AR 286). Gross documented that Plaintiff had no ambulation or movement issues and could perform "all activities of daily living in a normal period of time." (AR 289). The only specific evidence Gross reference for this conclusion was Plaintiff's presentation and ability to "stand for more than two minutes during the exam and . . . sit for more than fifteen minutes." (AR 289). The ALJ gave Gross's opinion "great weight." (AR 482).

## C.    Steps Four and Five.

Proceeding to step four, the ALJ determined Plaintiff had no past relevant work. (AR 484). At step five, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy prior to February 14, 2023, based on his RFC, age, education, and work

experience. (AR 485). The ALJ relied on a vocational expert's testimony that a person with Plaintiff's RFC and other traits could perform representative occupations like routing clerk, collator operator, and marker. (AR 485). However, the ALJ found that Plaintiff's advanced age as of February 14, 2023, qualified him for disability starting after that date because he could no longer perform any jobs existing in significant numbers in the national economy. (AR 486).

## IV.    BRIEFING SUMMARY

Plaintiff asserts that reversal of the Commissioner's final decision is proper on three grounds. [Doc. 10]. First, Plaintiff argues the ALJ failed to properly consider the requirements for Listing 1.18 at step three by neglecting evidence of his one-handed cane use combined with impairments to his upper extremities. *Id.* at 16–18. Second, Plaintiff argues the ALJ did not base her rejection of Samuel's, Snyder's, Felix's, and Schosheim's medical opinions on substantial evidence. *Id.* at 19–28. Third, Plaintiff argues that the ALJ improperly evaluated his subjective statements about the severity of his symptoms. *Id.* at 28–31.

On the first argument, the Commissioner responds that the ALJ adequately explained how she found Plaintiff did not meet the section 1.18 listing because the record demonstrated Plaintiff's walking issues never reached the level of requiring a cane continuously for at least twelve months. [Doc. 19, at 5–9]. On the second argument, the Commissioner asserts the ALJ's rejection of Samuel's, Snyder's, Felix's, and Schosheim's opinions included specific justifications that were reasonable and supported by the record; any further scrutiny by the court would amount to a re-weighing of evidence. *Id.* at 14–20. On the third argument, the Commissioner responds that the ALJ discussed Plaintiff's statements about his symptoms in detail, set forth the specific evidence she relied on, and reasonably concluded that Plaintiff had exaggerated their severity. *Id.* at 20–21.

Plaintiff replies that the ALJ's discussion of his cane use never actually addressed the evidence that he used one nor articulated how she reconciled it with the treatment notes she relied on to find he didn't meet the Listing 1.18's criteria. [Doc. 20, at 1–3]. For the medical opinions, Plaintiff argues that the ALJ improperly substituted her lay opinion for the experts by cherry-picking evidence of "normal" observations of Plaintiff by examiners. *Id.* at 3–6. Plaintiff did not offer a reply on the issue of his testimony, instead resting on his arguments in his opening brief. *Id.* at 8.

## V.    <u>ANALYSIS</u>

The Court finds the ALJ did not use substantial evidence to reject medical opinions that Plaintiff could not stand or walk for as long as light work would require in a normal workday. Because Plaintiff's claim is now nearly thirteen years old, no further factfinding would serve a useful purpose, and the Administration has thrice committed the same type of error, the Court will remand the case for an award of immediate benefits.

**A.    The ALJ Did Not Base Her Assessment of Snyder's, Felix's, and Schosheim's Opinions of Plaintiff's Ability to Stand and/or Walk on Substantial Evidence.**

1.    *Applicable law for assessing medical opinions.*

The ALJ must review all proffered medical opinions on a claimant's limitations as part of the whole record and explain how they impacted her RFC analysis. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treatment relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 404.1520c(c). The most critical factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ need not discuss every listed factor so long as she addresses the supportability and consistency factors and adequately supports the persuasiveness that she assigns an opinion. *Id.*; *Oldham v.*

*Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not, without explanation, downplay, mischaracterize, or cherry-pick elements from a medical opinion to support her RFC determination, or otherwise fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

Because Plaintiff filed his claim prior to March 27, 2017, 20 C.F.R. § 404.1527 applies. If a medical opinion is made by a treating medical professional, the ALJ must give it "controlling weight" unless the ALJ determines it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). If the opinion is not controlling, the ALJ may still consider the length of treatment, frequency of examination, and the nature and extent of the treatment relationship when weighing the medical expert's opinion. *Id.* § 404.1527(c)(2)(i)–(ii).

2.    *The ALJ did not properly assess Snyder's, Felix's, and Schosheim's opinions.*

The Court finds that the ALJ applied the correct legal standards and relied on substantial evidence for her weighing of Samuel's opinions. However, the ALJ did not rely on substantial evidence to dismiss Snyder's, Felix's, and Schosheim's opinion that Plaintiff's ability to stand and/or walk was limited in duration.

For Samuel's opinions, the ALJ articulated how they appeared to change over time in severity despite consistent reports of symptoms "with the exception . . . of the claimant's hip." (AR 479). The ALJ also noted that Samuel failed to explain how she concluded Plaintiff's symptoms were so severe despite imaging that did not reflect extreme physical abnormalities. (AR 479). Finally, the ALJ relied on the fact that two other treating physicians, Snyder and Dr. Robert Schwartz, opined less severe limitations despite relying on the same clinical findings. (AR 479). For the same reasons, the ALJ explained why Samuel's opinion was not due controlling weight

10

despite her treating role. (AR 479). Thus, the ALJ addressed the consistency and supportability factors, followed 20 C.F.R. § 404.1527(c), and relied on substantial evidence in the record for the persuasiveness she assigned the opinions.

However, the ALJ did not rely on substantial evidence to reject Snyder's, Felix's, and Schosheim's opinions. Snyder concluded in 2019 that Plaintiff would be unable to stand more than two hours based on his progression of pain symptoms, x-ray imaging, and range of motion. (AR 995–97). Snyder believed Plaintiff "probably" needed a hip replacement, but Plaintiff stated he would wait until he got older so the replacement would last "as long as it can." (AR 996). The ALJ gave two reasons why she found Snyder's opinion unpersuasive. First, the ALJ stated it was "not supported by and is inconsistent with the evidence as a whole." (AR 480). The Court finds that statement is too vague to qualify as substantial evidence. *Frazer v. Kijakazi*, No. 20-cv-01147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022).

Second, the ALJ found Plaintiff's "wide range of activities" were consistent with light work. (AR 480). The daily activities relied on by ALJ were in Plaintiff's 2023 hearing testimony and 2013 function report and included certain chores, running errands, playing guitar, spending time with his children, cooking, and personal hygiene. (AR 470–71). However, Plaintiff never indicated he could maintain these activities for long. On the contrary, Plaintiff stated that his pain and mobility limitations required him to take far more breaks and far more time in total to perform them. *E.g.*, (AR 214–218, 570–73, 575). The longest time Plaintiff reported spending on an activity was ninety minutes doing laundry, and the 2013 function report does not reflect whether he stood or sat. (AR 215). Because the impairment that Snyder assessed was in *maintaining* standing and/or walking, Plaintiff's statements about his daily activities were consistent with the opinion. Thus, the ALJ failed to base her rejection of Snyder's opinion on substantial evidence. The error is

11

particularly acute given Snyder is a treating physician who opined in his area of specialty. (AR 480); 20 C.F.R. § 404.1527(c)(2).

The ALJ similarly erred with Felix's and Schosheim's opinions. With Felix, the ALJ rejected his limitation on Plaintiff's standing and walking based on its inconsistency with Yaw's and Gross's 2009 opinions and "unremarkable clinical and imaging reports." But Yaw never assessed the maximum limits of Plaintiff's ability to stand and walk. (AR 281, 481). The ALJ instead extrapolated from Yaw's findings that Plaintiff suffered from deconditioning and had "full strength and range of motion of all extremities." (AR 481); *see Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993) (ALJ may not substitute lay opinion for that of a medical professional). Furthermore, Yaw's early observations of hip pain prior to November 2009 compared to Felix's more severe 2013 findings are consistent with the progressive degeneration of Plaintiff's hips, especially his right hip, which the ALJ observed in her discussion of objective medical evidence. *See* (AR 472–79). While Gross opined that Plaintiff's reports of pain and limitations did not have "any merit," the basis for his opinion on Plaintiff's ability to maintain standing and walking was Plaintiff's two minutes of standing and fifteen minutes of sitting in the exam room. (AR 289). That observation cannot sustain a finding that a claimant has no limits in that area. *See Bills v. Comm'r, SSA*, 748 F. App'x 835, 840 (10th Cir. 2018) (claimant's ability to sit comfortably during examination did not constitute substantial evidence that claimant could sit for an unlimited amount of time).

Finally, the ALJ found Schosheim's opinions persuasive except for his conclusion that Plaintiff could not stand and/or walk for more than four hours in a workday. (AR 484). The ALJ rejected this opinion based on two sets of treatment notes from chiropractic visits in September

12

and October 2022. (AR 484). However, none of the notes addressed Plaintiff's ability to sustain walking and/or standing for several hours. (AR 1169–80).

In sum, the ALJ rejected well-supported opinions about Plaintiff's limitations on his ability to maintain walking and/or standing during a workday without substantial evidence. Light work requires that a claimant can "substantially" perform a "good deal of walking or standing." *Id.* § 404.1567(b)(2). Generally, that standard means the claimant can walk and/or stand for six hours out of an eight-hour workday to qualify for light work. *Gutierrez v. Barnhart*, 109 F. App'x 321, 326 (10th Cir. 2004). Thus, a proper weighing of the opinions could have precluded the ALJ's RFC determination. Because this error is sufficient to reverse the Commissioner's final decision, the Court does not address Plaintiff's other arguments.

**B.     The Court Will Remand for an Award of Immediate Benefits.**

The Court finds that remand for an immediate award of benefits, rather than re-consideration, is appropriate. Courts typically remand an erroneous ALJ decision for further factfinding, but the Commissioner "is not entitled to adjudicate a case ad infinitum" until he gets it right. *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (internal quotations omitted). Factors for whether an award of benefits is appropriate include the age of the case, the usefulness of further factfinding, and the posture of the case upon remand. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006); *Sisco*, 10 F.3d at 746. Pursuant to this standard, the Court has awarded benefits where a case has lasted nearly ten years or longer and the Commissioner's final decision has been reversed multiple times for the same errors. *Cynthia G. v. Dudek*, No. 24-cv-00592, 2025 WL 546392, at *5–6 (D.N.M. Feb. 19, 2025); *Padilla v. O'Malley*, No. 23-cv-00394, 2024 WL 2896074, at *3–4 (D.N.M. June 10, 2024); *Maldonado v. Kijakazi*, No. 22-cv-00554, 2023 WL 4235637, at *4 (D.N.M. June 28, 2023).

Plaintiff's disability claim is nearly thirteen years old. The Commissioner's final decision has been reversed twice already, including once by the Appeals Council. Each time, the grounds for reversal included the failure to properly assess medical opinions that Plaintiff had serious limitations on his work-related abilities. (AR 635–37, 679). The Court's reversal here is the second time the Administration has erred with Schosheim's opinions specifically. (AR 679).

Furthermore, additional factfinding would serve no useful purpose. The record has had over a decade to develop and neither party suggests new material might impact the analysis. The Commissioner argues in a footnote that because there were "wide ranging opinions" on Plaintiff's work-related abilities, including opinions of non-disability, remand is proper if there is reversible error. [Doc. 19, at 22 n.2]. However, as discussed above the only opinion to find Plaintiff had standing and walking abilities consistent with light work's demands was Gross's, who offered no sound basis for his conclusion. (AR 289). And the ALJ appeared more focused on Gross's opinion of Plaintiff's credibility—and her own impression of Plaintiff transparently wanting disability benefits—rather than comparing Gross's assessment to the evidence relied on by other medical experts. *See* (AR 473, 482).[2] Given that three ALJs have failed to meet the lenient standard of review, the Court lacks "confidence that remanding this case yet again will produce a decision supported by substantial evidence and free from legal error." *Padilla*, 2024 WL 2896074, at *3.

## VI.   CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's motion to reverse [Doc. 10] and remands the case for an award of immediate benefits for the period at issue from November 19, 2009, through February 13, 2023.[3]

---

[2] For example, many times the ALJ would find imaging and other tests showed normal finding or minimal impairments only to then acknowledge they confirmed the degeneration of Plaintiff's hips from arthritis. *E.g.*, (AR 472–75, 479–82).
[3] The Court relies on the period set by the ALJ because Plaintiff did not challenge that finding.

15

IT IS SO ORDERED.

HON. JERRY H. RITTER
United States Magistrate Judge